Filed 4/3/24  In re A.G. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.G. et al., Persons Coming Under the Juvenile Court Law. | C099679 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.C.,<br><br>Defendant and Appellant. | (Super. Ct. No. STK-JD-DP-2021-0000509) |

Appellant M.C., mother of the minors, H.G., A.G., L.G., and E.G., appeals from the juvenile court's orders terminating parental rights and freeing the minors for adoption.  (Welf. & Inst. Code, §§ 366.26, 395; statutory section citations that follow are found in the Welfare and Institutions Code unless otherwise stated.)  Mother contends

1

that the juvenile court failed to comply with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) by failing to make an ICWA finding prior to terminating parental rights.  We will conditionally affirm subject to full compliance with the ICWA on remand, as described in this opinion.

FACTS AND HISTORY OF THE PROCEEDINGS

Because the issue on appeal is limited to ICWA compliance, we need not set forth a detailed recitation of the underlying facts and procedure.  It is sufficient to say that on December 26, 2021, the San Joaquin County Human Services Agency (Agency) sought a protective custody warrant and thereafter, filed a petition alleging that the newborn minor came within the provision of section 300, subdivision (b)(1), failure to protect, and subdivision (j), abuse of a sibling, based on both mother and the newborn minor, E.G., testing positive for amphetamines at the time of E.G.'s birth.  Mother had previously tested positive for amphetamines at the time of L.G.'s birth in June 2020, and she failed to obtain prenatal care during her pregnancy with E.G.

The detention report showed that the investigating social worker asked the parents about possible Native American ancestry prior to the filing of the section 300 petition. The Agency filed Indian Child Inquiry Attachment (ICWA-010) forms, reporting a social worker spoke with father, W.G., and mother about whether the minor had any Native American ancestry, and the inquiry gave the social worker no reason to believe the minors were or may be Indian children.  At the detention hearing, the minors were ordered detained.

Father subsequently provided a Parental Notification of Indian Status (ICWA-020) form, stating he had no Native American ancestry.  An ICWA-20 form was not completed by mother.  However, at the January 11, 2022, jurisdictional hearing, the juvenile court inquired of each parent about Native American ancestry, and both mother and father denied any such ancestry.  Following some amendments to the petition, mother

2

and father submitted on the Agency's jurisdiction report, and the court found the allegations of the petition true. In a subsequent disposition report, the Agency reported that there was no reason to believe the minors were Indian children as defined by the ICWA. At the dispositional hearing, the court found reasonable efforts were made to prevent or eliminate the need for the removal of the minors and adopted the findings and orders proposed in the Agency's disposition report. The applicability of the ICWA was not addressed at subsequent proceedings, and the court did not make an ICWA finding.

On February 2, 2023, mother filed notice of her intent to file a writ challenging the termination of her reunification services. On April 4, 2023, this court denied mother's petition for extraordinary writ on the merits. (*Joyce G. v. Superior Court* (1995) 38 Cal.App.4th 1501, 1513-1514.) The order denying the petition noted that mother's contention that the ICWA inquiry and notice provisions were not satisfied was premature because the juvenile court had not made a ruling on ICWA at or before the challenged hearing. (*In re J.J.* (2022) 81 Cal.App.5th 447, 461.) The order noted that any opinion would be advisory and encouraged the juvenile court and the Agency to ensure full compliance with the ICWA as early as possible in the proceedings.

On April 6, 2023, the Agency filed an ICWA-020 form completed by mother, stating that she did not have Native American ancestry. The Agency's April 28, 2023, status review report showed that mother and father both denied having Native American ancestry at the jurisdiction hearing. Additionally, it was reported that on April 13, 2023, the Agency ran a Nexis Lexis search and sent ICWA inquiry letters to maternal and paternal relatives. The report reflected that the maternal grandparents and paternal grandfather were deceased, and that the paternal grandmother had not come forward for visitation. Based on this inquiry, the Agency reported there was no reason to believe the minors were Indian children within the meaning of the ICWA.

On August 7, 2023, the Agency filed the ICWA-020 forms completed by the paternal grandmother and paternal aunt, in which they each indicated having no Native

3

American ancestry.  In its August 25, 2023, section 366.26 report, the Agency reported that there was no reason to believe the minors were Indian children within the meaning of the ICWA based on its inquiry.  On October 9, 2023, at the contested selection and implementation hearing pursuant to section 366.26, the juvenile court did not make any further findings regarding the ICWA, and found the minors adoptable, determined no statutory exceptions to adoption were applicable, and terminated parental rights as to mother and father.

DISCUSSION

Mother contends that the juvenile court failed to consider whether the Agency adequately complied with the notice and hearing requirements of the ICWA and failed to make a finding on the applicability of the ICWA.  We agree that remand is necessary.

As this court recently explained:  " 'The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings.  [Citations.]  A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]'  (*In re A.W.* (2019) 38 Cal.App.5th 655, 662 [].)  The ICWA defines an ' "Indian child" ' as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'  (25 U.S.C. § 1903(4).)  The juvenile court and the social services [agency] have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child.  (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)"  (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review granted Oct. 12, 2022, S276056.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings.  First, from the Agency's initial contact with a minor and his [or her] family,

4

the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  (§ 224.2, subds. (a), (b).)  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  (*Id*., subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply.  (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id*., subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)"  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)  We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence.  (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

Here, mother and father each denied Native American ancestry, and following mother's extraordinary writ, the Agency made further inquiry and efforts to locate and contact relatives, obtaining two additional denials of Native American ancestry from the paternal grandmother and aunt.  Mother asserts, "It is not known, however, if those efforts were adequate and met the requirements for proper ICWA inquiry as the court failed to review them or address their adequacy."

Mother's counsel before the juvenile court was undoubtedly aware of the juvenile court's failure to make an ICWA finding, as demonstrated by her February 2023 writ petition raising an ICWA argument and this court's April 2023 order denying the petition.  The juvenile court, the Agency, and counsel involved in this case were aware that the juvenile court had yet to make final findings on the applicability of the ICWA because this fact was noted in mother's writ petition, and in our order denying the petition, in which we expressly found that the ICWA claim was premature, "because it does not appear the juvenile court made an ICWA ruling at or before the challenged

5

hearing." Nonetheless, over the course of the following six months leading up to the October 9, 2023, selection and implementation hearing pursuant to section 366.26, the juvenile court did not make, nor did counsel request it to make, an ICWA finding after additional inquiry efforts were made by the Agency. While the juvenile court and the Agency are charged with making the appropriate inquiry under the ICWA and the juvenile court is charged with making an ICWA finding, it is equally the obligation of the parents' and minors' counsel to promptly bring such matters to the attention of the juvenile court. Counsel cannot remain idle, aware of alleged deficiencies in ICWA compliance, and then complain about such deficiencies on appeal.

" 'The notice requirements serve the interests of the Indian tribes "irrespective of the position of the parents" and cannot be [forfeit]ed by the parent.' " (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435; but see *In re X.V.* (2005) 132 Cal.App.4th 794, 798 ["The purposes of the ICWA are indeed commendable, but we do not believe Congress envisioned or intended *successive* or *serial* appeals on ICWA notice issues when, given a proper objection, they could easily be resolved during proceedings on remand for the specific purpose of determining whether proper notice was given"]; *In re Z.W.* (2011) 194 Cal.App.4th 54, 63-68 ["A line has to be drawn. At some point, there must be finality to the ICWA noticing process. Balancing the minor's interest in permanency and stability against the tribes' rights under the ICWA, we draw the line in this case"].) But " '[c]ounsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice.' " (*Williams v. Superior Court* (1996) 46 Cal.App.4th 320, 330.) The juvenile court did not receive such aid here, resulting in an unreasonable delay in achieving permanence for these young minors. (See, e.g., *In re Sade C.* (1996) 13 Cal.4th 952, 993 [noting "the pointed and concrete harm that the child may suffer" from prolonged proceedings]; *In re A.R.* (2021) 11 Cal.5th 234, 249

6

["dependent children have a critical interest in avoiding unnecessary delays to their long-term placement"]; *In re Marilyn H.* (1993) 5 Cal.4th 295, 306 [children have a "compelling right[] . . . to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child"].)

The juvenile court was required to make findings as to the applicability of the ICWA and its failure to do so here was error. (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 704-705, 709.) Because the juvenile court did not make the requisite findings and orders that ICWA inquiry and notice were sufficient and that the ICWA does not apply, we have no ICWA findings and orders to review and any remarks we would make on the adequacy of the Agency's inquiry and notice would be advisory. (See *People v. Buza* (2018) 4 Cal.5th 658, 693 ["We . . . abide by . . . a ' "cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more" ' "].) Accordingly, we remand the matter for the juvenile court to enter an ICWA finding based on the Agency's demonstration of inquiry and notice.

## DISPOSITION

The orders terminating parental rights are conditionally affirmed subject only to full compliance with the ICWA as described in this opinion. If, on remand, the juvenile court determines the ICWA applies, the court shall vacate its previous orders terminating

parental rights and conduct further proceedings consistent with the ICWA, including a new section 366.26 hearing.  (25 U.S.C. § 1914; § 224, subd. (e).)


                                               _____

                                               HULL, J.


We concur:


_____

EARL, P. J.


_____

WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.